**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Biltmore Associates, L.L.C., | ) | No. CV-05-4220-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Twin City Fire Insurance Company, et al., | ) | |
| Defendants. | ) | |

Visitalk.com, Inc. ("Visitalk") purchased directors and officers liability insurance from Reliance Insurance Company ("Reliance"), Twin City Fire Insurance Company ("Twin City"), Great American Insurance Company, Carolina Casualty Insurance Company, Old Republic Insurance Company, and North American Speciality Insurance Company ("North American") (together, "the insurance companies"). Several of Visitalk's directors and officers subsequently breached their fiduciary duties, which subjected them to substantial liability. Visitalk filed insurance claims for its losses, which the insurance companies denied. Biltmore Associates, L.L.C. ("Biltmore")[1] then filed this action against the insurance companies for breach of contract and bad faith.[2]

---

[1] Visitalk filed a voluntary petition for bankruptcy. Pursuant to the bankruptcy order confirming Visitalk's plan of reorganization, all claims held by the bankruptcy estate were assigned to the creditors' trust. All of Visitalk's creditors are the trust's beneficiaries, and Biltmore is the trustee. Biltmore brings this action on behalf of the creditors' trust.

[2] The complaint includes counts for the breach of the duty of good faith and fair dealing, and for bad faith. These are two names for the same cause of action. See Noble v. Nat'l Am. Life Ins. Co., 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981) ("[I]n every insurance

1    The court has before it defendants' motions to dismiss and joinders thereto (docs. 18,

2    21, 23, 25, 27, 39, 60), plaintiff's responses (docs. 43, 54), and defendants' replies (docs. 47,

3    52, 53, 59).  The court also has before it Twin City's request for judicial notice (doc. 26);

4    plaintiff's motion to exclude evidence (doc. 44), the responses (docs. 46, 51), and the replies

5    (docs. 55, 57); and plaintiff's motion for a continuance (doc. 45), the responses (docs. 48, 50),

6    and the reply (doc. 56).

7                              **I**.  **Standard of Decision**

8    We begin by clarifying the standard by which we consider a motion to dismiss

9    pursuant to Rule 12(b)(6), Fed. R. Civ. P.  A complaint should only be dismissed if "it

10   appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

11   would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

12   Therefore, we must accept all of plaintiff's material factual allegations as true, and draw all

13   reasonable inferences in plaintiff's favor.  Anderson v. Clow (In re Stac Elecs. Sec. Litig.),

14   89 F.3d 1399, 1403 (9th Cir. 1996).  "However, the court is not required to accept legal

15   conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

16   drawn from the facts alleged.  Nor is the court required to accept as true allegations that are

17   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Cholla

18   Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (quotations omitted).  "[T]he

19   price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete

20   enough to warrant further proceedings, which may be costly and burdensome."  DM

21   Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in

22   original).  The motion to dismiss therefore forms a bulwark against unmeritorious actions and

23   fishing expeditions.  See id.

24

25   _____

26   contract there is an implied covenant of good faith and fair dealing [and therefore] when the
     insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is
27   subject to liability in tort.").  Accordingly, we refer to plaintiff's counts three and four
28   together as plaintiff's bad faith claims.

## II.  Primary Insurance Policies

The Reliance policy was Visitalk's initial primary insurance policy, effective December 15, 1999 to December 15, 2000.  Reliance, however, became insolvent, and on July 15, 2000, in consideration of $8,126.17, the parties to the Reliance policy agreed to its cancellation.  <u>Reliance Policy</u>, Ends. 99, 100.[3] Visitalk then entered into a primary insurance policy with Twin City for the period from July 15, 2000 to December 31, 2001.  The Reliance and Twin City policies are identical in all material respects.

### A

Plaintiff contends that the insurance claims arose during the Reliance policy period, that Twin City is the successor in interest to the Reliance policy, and that therefore the claims are covered by the Twin City policy.  Defendants move to dismiss, contending that plaintiff cannot show that Twin City is bound by any of Reliance's contractual obligations.

First, plaintiff erroneously contends that we must accept as true its contention that Twin City "succeeded in interest the coverage under the Reliance policy."  <u>Response to Joint Motions to Dismiss</u> at 6.  This is a legal conclusion, not a factual allegation, and we cannot assume its accuracy.  And plaintiff does not allege that Twin City ever agreed with either Reliance or Visitalk to assume Reliance's liabilities–a necessary factual predicate to that legal conclusion.

Next, plaintiff contends that Twin City is bound by the Reliance policy because "unless there [sic] Visitalk received adequate consideration, any purported change to coverage arising from transfer of the policy from Reliance to Twin City was invalid such that the original Reliance policy would establish the scope of coverage to which Twin City succeeded."  <u>Id.</u> at 7.  This assertion is not only unclear and unsupported, it is wrong because

---

[3] Plaintiff moves to exclude the policies from consideration for lack of authentication.  That motion is denied (doc. 44) because the policies are incorporated by reference in the complaint, defendants submitted affidavits attesting to their authenticity, plaintiff does not dispute the existence or accuracy of the material policy provisions, and despite plaintiff's contention that the "copy" stamp on the Reliance policy causes it to doubt the policy's authenticity, it attaches the same "copy" to its response to the joint motions to dismiss.

1   by contending that a modification to the contract was not supported by adequate

2   consideration, plaintiff would prove that any attempted delegation of duties was invalid, not

3   the opposite.   Moreover, even if there was merit to plaintiff's legal analysis, it would

4   succumb to the contract language.  Endorsements 99 and 100 of the Reliance policy clearly

5   state that "[i]n consideration of the return premium of $8,126.17[,] it is agreed that this Policy

6   is cancelled."

7        Finally, plaintiff points to two elements that show a connection between the Reliance

8   and Twin Cities policies.  First, the Twin City policy number is the Reliance policy number

9   followed by a handwritten "-99H."  Second, Endorsement 13 of the Twin City policy, titled

10   "Absolute Tie-In Limits Endorsement," states:

11 
12 
13 

> Notwithstanding the provisions of this Policy issued by Twin City Fire Insurance Company and Policy No. NDA 0152387 issued to Vistalk.com, Inc. [sic] (or any policy which may replace it or succeed it in time) by Reliance Insurance Company of Illinois, it is agreed that the maximum combined Limit of Liability for both policies shall be $5,000,000.

14   These are indicia of a relationship between the two entities or the two agreements.  However,

15   as plaintiff concedes, "[n]either the Twin City nor the Reliance policies address the

16   transaction between Reliance and Twin City" and the contract "does not explain [the] link."

17   <u>Response to Joint Motions to Dismiss</u> at 7.  And as noted above, plaintiff does not contend

18   that Twin City ever agreed with either Visitalk or Reliance to assume Reliance's liabilities.

19   Therefore, these factual allegations are insufficient to support plaintiff's contention that Twin

20   City is a "successor in interest" to Reliance under its contract with Visitalk.

21                                             **B**

22        Plaintiff alternatively contends that the insurance claim at issue arose during the Twin

23   City policy period, July 15, 2000 to December 31, 2001, and therefore Twin City is directly

24   liable.  Defendants move to dismiss, contending that the claim arose prior to the Twin City

25   policy period.

26        On January 11, 2000, Hovde Acquisition, L.L.C., forwarded to Visitalk a letter

27   describing the directors' and officers' securities violations.  These claims ("Hovde Claims")

28   formed the basis for an action by Hovde against the directors and officers.

1       On November 28, 2000, Visitalk filed a petition for bankruptcy.  Plaintiff contends

2 that after filing, Visitalk "became aware of claims against the Directors and Officers, on

3 behalf of Creditors, for breach of their statutory standard of conduct, fiduciary duties and

4 their duties of loyalty and due care."  Complaint ¶ 18.  On November 16, 2001, Visitalk

5 contacted the insurance companies to alert them to these claims and request coverage.  These

6 claims ("Creditor Claims") formed the basis for an action by Visitalk against the directors

7 and officers.

8       The Reliance policy defines a "claim" as "a written demand for civil damages or other

9 civil relief commenced by the Insureds' receipt of such demand."  Reliance Policy at 4.  It is

10 undisputed that the letter from Hovde to Visitalk constitutes a claim under this definition.

11       The Twin City policy provides that "[a]ll claims arising out of the same Wrongful Act

12 or Interrelated Wrongful Acts of one or more of the Insureds shall be considered a single

13 Claim" and that "[s]uch Claims shall be deemed to be first made on the date the first such

14 Claim is made . . . regard-less [sic] of whether such date is before or during the Policy

15 Period."  Twin City Policy at 9.  It is undisputed that the Hovde Claims and the Creditor

16 Claims are interrelated and that they were first made on January 11, 2000, which is before

17 the Twin City policy came into force.

18       The Twin City policy is a "claims-made" policy, meaning "the coverage . . . is limited

19 to liability for wrongful acts for which claims are first made while the policy is in force."

20 Id. at 1.  Defendants contend that because the claims were first made before the Twin City

21 policy period, the loss is not covered by the Twin City policy.  In response, plaintiff contends

22 that "[t]he Complaint alleges that [Visitalk] became 'aware of claims against the Directors

23 and Officers' after November 28, 2000," and that "[t]aking this in a 'favorable light,' the Court

24 should construe t [sic] that the underlying claim arose after the claimant became aware of the

25 claim."  Response to Joint Motions to Dismiss at 9.  Plaintiff's response entirely ignores

26 defendants' contentions with regard to the link between the Hovde Claims and the Creditor

27 Claims, and does not dispute that the Hovde Claims were made during the Reliance policy

28 period.  Plaintiff merely cites the complaint, which states that Visitalk was not aware of

claims brought "on behalf of Creditors," <u>Complaint</u> ¶ 18, until after it filed for bankruptcy. This clearly refers to the Creditor Claims, not the Hovde Claims, and is therefore irrelevant to defendants' contention.

> The Twin City policy further provides that:

>> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors and Officers . . . for, based upon, arising from, or in any way related to any claim, Wrongful Act, or circumstance if notice thereof is given under any directors and officers liability policy, the term of which incepted prior to the Inception Date of this Policy.

<u>Twin City Policy</u> at 6.  Defendants contend that because there was notice of the Hovde Claims during the Reliance policy period, the Twin City policy does not cover the Creditor Claims.  As above, plaintiff fails to respond to this contention, and merely asserts that it did not have knowledge of the Creditor Claims before the Twin City policy period.  Given the plain language of the contract, the undisputed timing of the claims, and plaintiff's non-responsive briefings, <u>see</u> LRCiv 7.2(i), we conclude that plaintiff cannot show that the Creditor Claims are covered by the Twin City policy.

### III.  Excess Insurance Policies

The other policies at issue are excess insurance policies.  Pursuant to the explicit language of each of those policies, the excess insurance companies' liabilities only arise when the subsidiary insurer has agreed to pay, has paid, or has been held liable to pay to the full amount of its limits.  This is also well established under Arizona law.  "Until a primary insurer offers its policy limits, the excess insurer does not have a duty to evaluate a settlement offer, to participate in the defense, or to act at all."  <u>Twin City Fire Ins. Co. v. Burke</u>, 204 Ariz. 251, 256, 63 P.3d 282, 287 (2003).  With an excess policy, "the limits of the underlying policy operate as a kind of deductible, and an insured pays a reduced premium to the excess carrier expressly because that carrier will be obligated to pay a claim only after a certain amount has been paid by the insured's primary insurer."  <u>St. Paul Fire & Marine Ins. Co. v. Gilmore</u>, 168 Ariz. 159, 162, 812 P.2d 977, 980 (1991) (quotation omitted).  Because

1   plaintiff does not show any primary insurance liability, it cannot show any excess insurance

2   liability.[4]

3                                   **IV.  Bad Faith Claims**

4          Plaintiff claims that defendants are liable for bad faith for their "improper refusal to

5   recognize coverage under the Policies."  Complaint ¶¶ 51, 53.  This claim fails because

6   defendants had a reasonable basis for denying Visitalk's insurance claims.  See Noble v. Nat'l

7   Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981) ("To show a claim for bad

8   faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the

9   policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis

10  for denying the claim.").

11         Plaintiff also claims that defendants are liable for bad faith for their "failure to take

12  their insureds' interests into account on at least an equal basis as their own" and by their

13  "conduct in connection with the handling of the Settling Suit Defendants' coverage claims."

14  Complaint ¶¶ 51, 53.  A plaintiff can prevail on a bad faith claim, even where the insurance

15  company prevailed on the underlying contract claim, if it can show a breach of the implied

16  covenant of good faith and fair dealing.  Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz.

17  504, 509, 838 P.2d 1265, 1270 (1992).  However, plaintiff's conclusory allegations lack an

18  essential factual predicate, and therefore they are insufficient to prevent dismissal.

19

20  ─────────────────

21         [4] Defendants also contend that plaintiff's contract claims fail pursuant to the "Insured
    v. Insured" contract provision, which excludes coverage for most claims made by one insured
22  for harm caused by another insured.  They contend that the claims were made by Visitalk,
    an insured and the debtor in the underlying bankruptcy action, against several directors and
23  officers, also insureds.  Plaintiff disagrees, contending that the claim was made by the debtor
    in possession, which it describes as a different entity than the debtor.  The distinction
24  between a debtor and a debtor in possession is nuanced and unclear, and has yielded varying
    results in district courts, among the circuits, and within the Ninth Circuit.  The application
25  of this distinction to an Insured v. Insured contract provision is more complex, and has also
    yielded varying results.  Having concluded that plaintiff cannot prevail on its contract claims,
26  we decline to confront these issues.  Furthermore, because no duty arose for the insurers to
    pay under their respective policies, we need not reach North American's contention that
27  plaintiff's breach of the cooperation clause relieved the insurers of that duty.

28

**V.  Conclusions**

For all these reasons, **IT IS ORDERED GRANTING** defendants' motions to dismiss (docs. 18, 21, 23, 25, 27, 39, 60).

**IT IS FURTHER ORDERED DENYING** as moot plaintiff's motion to exclude defendants' evidentiary submissions, except with regard to the insurance policies, which we considered, and for which it is **DENIED** for the reasons stated above (doc. 44).

**IT IS FURTHER ORDERED DENYING** as moot Twin City's request for judicial notice (doc. 26).

Because we did not consider matters outside of the pleadings, and only considered the insurance policies that were incorporated by reference in the complaint, **IT IS FURTHER ORDERED DENYING** plaintiff's motion to convert the motions to dismiss into motions for summary judgment and motion for a continuance (doc. 45).

The clerk is directed to enter judgment for defendants.

DATED this 21st day of July, 2006.


_____
Frederick J. Martone
United States District Judge